## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **KANJUETTE C.,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No. EA-25-612** |
| **FRANK J. BISIGNANO,** | * | |
| **Commissioner of Social Security,**[1] | | |
| | * | |
| **Defendant.** | | |
| | * | |

### MEMORANDUM OPINION

On February 24, 2025, Plaintiff Kanjuette C. petitioned this Court to review the final decision of the Social Security Administration (SSA or Commissioner) denying her claim for benefits. ECF No. 1. This case was referred to a United States Magistrate Judge with the parties' consent.[2] 28 U.S.C. § 636; Local Rule 301.4 (D. Md. Dec. 1, 2025). Pending before the Court is Plaintiff's appeal, which is fully briefed. ECF Nos. 13, 15. No hearing is necessary. Local Rule 105.6. This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig* v. *Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, and for the reasons set forth below, the Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion.

---

[1]  Plaintiff filed this case against Leland Dudek, the Acting Commissioner of Social Security, on February 24, 2025. ECF No. 1. On May 7, 2025, Frank J. Bisignano became the Commissioner. *See* https://perma.cc/6HGN-DL7G (last visited Feb. 6, 2026). Accordingly, Commissioner Bisignano has been substituted as Defendant in this case pursuant to Federal Rule of Civil Procedure 25(d).

[2]  This case was reassigned to the undersigned on January 8, 2026.

## I.    BACKGROUND

### A.    Procedural History

In 2021, Plaintiff filed an application for Disability Insurance Benefits under Title II of the Social Security Act (the Act), 42 U.S.C. § 301 *et seq.*, alleging a disability onset date of May 4, 2020.[3]  ECF No. 13 at 1; *see also* ECF No. 9-3 at 40.[4]  Plaintiff claims that she is disabled within the meaning of the Act because she is unable to work due to congestive heart failure, diabetes mellitus, hypertension, and a rotator cuff tear.  ECF Nos. 13 at 1; 9-3 at 30; 9-9 at 2–6; 9-10 at 5.  The SSA initially denied Plaintiff's application for benefits on November 4, 2022. ECF No. 9-8 at 9–10.  On November 23, 2022, Plaintiff sought reconsideration, and the SSA affirmed its initial denial.  ECF No. 9-8 at 13–17.  On May 30, 2023, Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on March 5, 2024.  ECF Nos. 9-6 at 95–117; 9-8 at 18–19.  The ALJ rendered a decision on May 22, 2024, in which the ALJ found that Plaintiff was not disabled within the meaning of the Act.  ECF No. 9-3 at 35–49. On July 25, 2024, Plaintiff requested a review of the ALJ's decision, which the Appeals Council denied on October 24, 2024.  ECF Nos. 9-3 at 9–11; 9-8 at 106–107; 9-10 at 118–128.  The ALJ's May 22, 2024 decision therefore constitutes the final, reviewable decision of the SSA. *Sims* v. *Apfel*, 530 U.S. 103, 106-107 (2000); 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(a).

### B.    Statutory Framework

The Social Security Act authorizes disability insurance benefit payments to every insured individual who "is under a disability."  *Cleveland* v. *Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801 (1999) (quoting 42 U.S.C. § 423(a)(1)); *see also Shue* v. *O'Malley*, No. 23-1795, 2024 WL

---

[3]  Plaintiff's application for benefits was not included in the administrative record.  *See generally* ECF No. 9.

[4]  Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files (CM/ECF) system printed at the top of the cited document.

2827936, at *3 (4th Cir. June 4, 2024). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).

Federal regulations require the ALJ to evaluate a claimant's disability claim using a five-step sequential evaluation process. 20 C.F.R. § 404.1520. Through this process, an ALJ evaluates, in order, "whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." *Hancock* v. *Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "The applicant bears the burden of production and proof during the first four steps of the inquiry." *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Mascio* v. *Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (internal quotation marks and citation omitted).

If the claimant does not carry their burden at the third step of the sequential evaluation, then the ALJ must assess relevant evidence and make a finding regarding the claimant's residual functional capacity. 20 C.F.R. § 404.1520(e); *Monroe* v. *Colvin*, 826 F.3d 176, 179 (4th Cir. 2016). Residual functional capacity is defined as "the most you can still do despite your [physical and mental] limitations." 20 C.F.R. § 404.1545. The residual functional capacity assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Mascio*, 780 F.3d at 636

(quoting Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional

Capacity in Initial Claims (SSR 96-8p), 61 Fed. Reg. 34,474, 34,475 (July 2, 1996)).  "Only after

such a function-by-function analysis may an ALJ express [residual functional capacity] 'in terms

of the exertional levels of work.'"  *Monroe*, 826 F.3d at 187 (quoting *Mascio*, 780 F.3d at 636).

The ALJ then uses its residual functional capacity determination at the fourth and fifth steps of

the disability assessment.  20 C.F.R. § 404.1520(e); *Monroe*, 826 F.3d at 179.

### C.    The ALJ's Decision

At step one of the five-step sequential disability evaluation, the ALJ found that Plaintiff

had not engaged in substantial gainful activity since the alleged disability onset date.  ECF No. 9-

3 at 40.  At step two, the ALJ found that Plaintiff suffered from the severe impairments of

"coronary artery disease, shoulder disorder, carpal tunnel syndrome, diabetes mellitus, and

obesity" and non-severe impairments of cervical spine disorder, depression, and anxiety.  *Id*. at

41.  At step three, the ALJ determined that Plaintiff "does not have an impairment or

combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1."  *Id.* at 43.  Before continuing to the

fourth step of the sequential evaluation, the ALJ determined that Plaintiff retained the residual

functional capacity to:

> perform light work as defined in 20 CFR 404.1567(b) with the
> following limitations: She can tolerate no concentrated exposure to
> temperature extremes or dust, fumes, or pulmonary irritants.  She
> can no more than frequently handle, finger, and feel.  She can no
> more than occasionally push, pull, or reach overhead.

*Id*. at 44.  At the fourth step, the ALJ determined that Plaintiff can perform past relevant work as

a policyholder information clerk, appointment clerk, and insurance clerk.  *Id*. at 48.  Lastly, at the

fifth step, the ALJ determined Plaintiff had not been under a disability, as defined in the Social

Security Act, and the SSA properly denied her application for benefits.  *Id*. at 49.

## II.    DISCUSSION

On appeal, Plaintiff argues that the ALJ erroneously assessed (1) her non-severe mental impairments, (2) medical opinion evidence, (3) her subjective statements, and (4) her residual functional capacity.  ECF No. 13 at 3–22.  Each of these arguments, along with the applicable standard of review, is addressed in turn below.

### A.    Standard of Review

The scope of judicial review of the SSA's disability determination is "circumscribed." *Britt* v. *Saul*, 860 Fed. Appx. 256, 259 (4th Cir. 2021) (citing 42 U.S.C. § 405(g)).  The Court must affirm the decision "so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence."  *Id.*; *accord Mascio*, 780 F.3d at 634; *Coffman* v. *Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  Factual findings supported by substantial evidence "shall be conclusive."  42 U.S.C. § 405(g); *see also Hays* v. *Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if [the] decision is supported by substantial evidence.").

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding."  *Biestek* v. *Berryhill*, 587 U.S. 97, 102 (2019).  Under this standard of review, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* at 103 (quoting *Consolidated Edison Co.* v. *NLRB*, 305 U.S. 197, 229 (1938)); *see also Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) ("Substantial evidence . . . is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.").  It is "more than a mere scintilla . . . [and] somewhat less than a preponderance."  *Laws*, 368 F.2d at 642.  The "threshold for such evidentiary sufficiency is not high."  *Biestek*, 587 U.S. at 103.

In conducting the substantial evidence inquiry, this Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co.* v. *Akers*, 131 F.3d 438, 439-440 (4th Cir. 1997). Although an ALJ's decision must be sufficiently detailed to allow for meaningful judicial review, an "elaborate or even sophisticated" explanation is not required. *Mascio*, 780 F.3d at 636-637; *T-Mobile S., LLC* v. *City of Roswell*, 574 U.S. 293, 302 (2015). Rather, an administrative decision's reasoning need only be "reasonably discernible." *Garland* v. *Ming Dai*, 593 U.S. 357, 369 (2021). "Meaningful review is frustrated—and remand necessary—only where [the court is] unable to fathom the [ALJ's] rationale in relation to evidence in the record." *Britt*, 860 Fed. Appx. at 262 (internal quotation marks and citation omitted).

### B.   Non-Severe Mental Impairments[5]

As explained above, an ALJ determines if a claimant suffers from a severe impairment at step two of the disability evaluation. *Hancock*, 667 F.3d at 472. An impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Federal regulations require an ALJ to evaluate the severity of mental impairments by assessing limitations in four "paragraph B" functional areas: (1) "understanding, remembering, or applying information"; (2) "interacting with others"; (3) "concentrating, persisting, or maintaining pace"; and (4) "adapting, or managing oneself." *Anthony M.* v. *Commissioner*, Civil Action No. SAG-19-651, 2020 WL 434581, at *2-3 (D. Md. Jan. 28, 2020) (citing 20 C.F.R. § 404.1520a). The severity determination at step two is distinct from the assessment of residual functional capacity, which occurs after step three. *See, e.g.*, *id.*

---

[5] Plaintiff's arguments regarding the ALJ's evaluations of Plaintiff's non-severe mental impairment and medical opinions are embedded within her residual functional capacity argument. ECF No. 13 at 6–8. For greater clarity, the undersigned addresses these arguments separately.

at *3 (explaining that "the limitations identified in the 'paragraph B' criteria are not [a residual functional capacity] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process") (internal quotations and citations omitted).

When formulating a residual functional capacity assessment, an ALJ "must consider all the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas* v. *Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe*, 826 F.3d at 188) (alteration in original); *see also* SSR 96-8p, 1996 WL 374184, at *5 (stating that an ALJ must consider the "limitations and restrictions imposed by all of an individual's impairments, even those that are not severe," when assessing a claimant's residual functional capacity).  Remand is appropriate where an ALJ finds an impairment non-severe at step two but then fails to consider its potential functional effects when assessing the claimant's residual functional capacity.  *E.g.*, *Janet L.* v. *Saul*, Civil Action No. CBD-19-2544, 2021 WL 1733469, at *6 (D. Md. Apr. 30, 2021) (remanding where "[a]lthough the Court found that the ALJ provided sufficient analysis to explain his conclusions that Plaintiff's impairments are non-severe at step two, the ALJ failed to consider Plaintiff's non-severe impairments throughout the sequential evaluation, as required by the Regulations").

Plaintiff contends that the residual functional capacity determination lacks the explanation required by the regulations because the ALJ did not impose specific functional restrictions or address why such restrictions were unnecessary.  ECF No. 13 at 6–8.  The Commissioner responds that "if an ALJ finds that a limitation is minimal or negligible . . . it is not error to decline to assess a resultant functional limitation."  ECF No. 15 at 8.  The Commissioner argues that "an ALJ need only support such a finding with a 'brief' discussion of evidence related to mental impairments that would support the ALJ's finding that no mental

[residual functional capacity] restriction is warranted." *Id.* (citing *Kenneth C.* v. *Kijakazi*, Civil Action No. BAH-22-2936, 2023 WL 5721641, at *4 (D. Md. Sep. 5, 2023)).

At step two, the ALJ evaluated the severity of Plaintiff's mental impairments by assessing her limitations in the four "paragraph B" functional areas.  ECF No. 9-3 at 41–42.  The ALJ found that Plaintiff had mild limitations in all four functional areas.  *Id.*  Specifically, the ALJ noted that Plaintiff needed reminders to take medication, interacted with others infrequently, experienced anxiety in crowded places, had difficulty performing some calculations, slept poorly, and reported difficulty handling stress and changes in routine.  *Id.*  The ALJ further acknowledged diagnoses of "adjustment disorder with mixed anxiety and depressed mood."  *Id.* at 42.  The ALJ stated that the clinical findings were consistent with "mild to moderate depression."  *Id.*  The ALJ ultimately concluded that these impairments were non-severe because, when "considered singly and in combination," they did not cause more than "minimal limitation in the claimant's ability to perform basic mental work activities."  *Id.* at 42.  The ALJ expressly recognized, however, that his paragraph B findings "are not a residual functional capacity assessment" and that the residual functional capacity determination at steps four and five required "a more detailed assessment."  *Id*.  Despite this acknowledgment, the decision contains no such assessment.  After concluding that Plaintiff's mental impairments were non-severe, the ALJ did not discuss whether Plaintiff's mild limitations resulted in any work-related functional restrictions, nor explain why none were warranted.

The only discussion of Plaintiff's mental impairments after step two appears in the ALJ's summary of two medical opinions.  *Id.* at 47–48.  The ALJ briefly summarized the November 4, 2022 opinion of a reviewing psychologist, who found Plaintiff's mental impairments were non-severe.  *Id.* at 47; ECF No. 9-7 at 4–5.  The ALJ deemed this opinion persuasive because it was consistent with the record.  ECF No. 9-3 at 47.  The ALJ also summarized an October 26, 2022

consultative psychological evaluation, which found that "depressive symptoms likely contributed to [Plaintiff's] inability to work." *Id.* at 48; ECF No. 9-14 at 69. The ALJ found that opinion unpersuasive because it was not consistent with evidence in the record as a whole. ECF No. 9-3 at 48. These summaries do not constitute the "more detailed assessment" the ALJ acknowledged was required, as they address only whether Plaintiff's mental impairments were present or severe, an issue the ALJ had already addressed at step two. *E.g.*, *Payton* v. *Colvin*, Civil Action No. JKS 13-2034, 2014 WL 4182339, at *4 (D. Md. Aug. 20, 2014) ("Thus, while the failure to address [Plaintiff's] depression at step two is not necessarily reversible error, it became so when the ALJ failed to consider the mental impairment in his [residual functional capacity] assessment, as required by 20 C.F.R § 404.1520a (d)(3)").

The residual functional capacity assessment requires the ALJ to evaluate whether Plaintiff's mental impairments call for any work-related functional limitations, and, if not, to explain why none are warranted. *Eiker* v. *Astrue*, Civil Action No. CBD-11-3584, 2013 WL 2149755, at *8 (D. Md. May 15, 2013) (finding that the ALJ did not address claimant's alleged limitations caused by bipolar disorder and did not explain how these limitations lead to the conclusion that claimant can perform work in two-hour increments). The Commissioner correctly notes that a brief discussion would be sufficient to explain why no residual functional capacity restriction is warranted based on the evidence. ECF No. 15 at 8. Here, however, there was no discussion at all, which necessitates remand. *E.g.*, *Janet L.*, 2021 WL 1733469, at *8 ("Failure by the ALJ to consider a claimant's non-severe impairments at subsequent steps of the [residual functional capacity] analysis requires remand.") (collecting cases).

### C.    Medical Opinions

An ALJ "must follow certain procedures when assessing the weight to which medical opinions are entitled" and "articulate . . . how persuasive [the ALJ] finds each medical opinion."

*Adrianna S.* v. *Commissioner, Soc. Sec. Admin.*, Civil Action No. SAG-20-3136, 2022 WL 112034, at *1 (D. Md. Jan. 12, 2022) (citing 20 C.F.R. §§ 404.1520c, 404.1520c(b)). The implementing regulations identify a series of factors that the SSA must consider when assessing medical opinions. 20 C.F.R. § 404.1520c(c). Among those factors, "[s]upportability and consistency are the most important factors when considering the persuasiveness of medical opinions." *Adrianna S.*, 2922 WL 112034, at *1; *see also* 20 C.F.R. § 404.1520c(b)(2). "Supportability generally refers to 'the objective medical evidence and supporting explanations provided by a medical source.'" *Adrianna S.*, 2022 WL 112034, at *1 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Strictly speaking, 'supportability' concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Carlos F.* v. *Kijakazi*, Civil Action No. BAH-22-2049, 2023 WL 3293086, at *3 (D. Md. May 5, 2023) (internal quotation marks and citation omitted) (quoting 20 C.F.R. § 404.1520c(c)(1)). "In assessing consistency, the ALJ looks to the degree of cohesion between the medical opinion and 'the evidence from other medical sources and nonmedical sources in the claim.'" *Andrew P.* v. *O'Malley*, Civil Action No. CDA-23-2443, 2024 WL 4288063, at *3 (D. Md. Sept. 25, 2024) (quoting *Adrianna S.*, 2022 WL 112034, at *1); *see also* 20 C.F.R. § 404.1520c(c)(2). "Supportability and consistency 'must be considered independently.'" *Antwoin W.* v. *Dudek*, Civil Action No. CDA-24-75, 2025 WL 949410, at *3 (D. Md. Mar. 28, 2025) (quoting *Carlos F.*, 2023 WL 3293086, at *3).

Remand is warranted when an ALJ fails to properly consider the supportability of a medical opinion. *E.g.*, *Lauren P.* v. *Dudek*, Civil Action No. SAG-24-0480, 2025 WL 754522, at *5 (D. Md. Mar. 10, 2025) (collecting cases). Accordingly, an ALJ must "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(b)(2). This explanation must include reference to specific evidence in the

record.  *Shelley C.* v. *Commissioner of Soc. Sec. Admin.*, 61 F.4th 341, 358 (4th Cir. 2023).

Importantly, for "the ALJ to have adequately discussed the supportability of . . . opinions, the

ALJ needed to evaluate what the [physicians] said they based their opinion on—not simply how

their opinions compared to the record evidence as a whole, which only goes to . . . consistency."

*Carlos F.*, 2023 WL 3293086, at \*3 (quoting *Mary W.* v. *Commissioner of Soc. Sec.*, Civ. No.

20-5523, 2022 WL 202764, at \*10 (S.D. Ohio Jan. 24, 2022)) (alteration in original).

Plaintiff argues that the ALJ failed to properly evaluate the supportability of the October

21, 2022 medical opinion of consultative examiner Anuja Kurichh, M.D.  ECF Nos. 13 at 13–15;

9-14 at 55–64.  The Commissioner contends that the ALJ relied "on the entire record, not

singular pieces of evidence" to find Dr. Kurichh's opinion unpersuasive and that the ALJ's

decision is therefore supported by substantial evidence.  ECF No. 15 at 17–19.  Dr. Kurichh's

October 24, 2022 examination of the Plaintiff showed a

> limited range of motion in cervical spine, lumbar spine, both
> shoulders, both hips, limited supine straight leg raise, normal gait
> with no assistive device, tenderness to palpation of her bilateral
> trapezius and paraspinal muscles, slightly decreased strength in her
> right grip and upper extremity, normal sensation, normal deep
> tendon reflexes, intact cranial nerves.

ECF Nos. 9-3 at 48; 9-14 at 55–62.  Dr. Kurichh opined that Plaintiff's "ability to do work

related activities such as prolonged sitting, standing, and walking is limited due to low-back

pain, abdominal spasm, fatigue, [and] shortness of breath" and that "[s]he cannot lift and carry

any weight more than 5 [pounds] for [a] short time or short distance only."  ECF No. 9-14 at 62.

The ALJ found Dr. Kurichh's opinion unpersuasive because it was

> not entirely consistent with the evidence in the record as a whole,
> which showed that she is stable from a cardiac standpoint with her
> sternal chest wound noted to be completely healed, that her diabetes
> is under improving control with normal sensation noted in her
> extremities, and that she has had little treatment for her carpal tunnel
> syndrome or her shoulder disorder.

ECF No. 9-3 at 48.

In *Carlos F.*, this Court held that the ALJ had failed to address the supportability factor where the ALJ deemed the examiner's opinion unsupported solely because it conflicted with prior assessments, without evaluating whether the examiner's own explanations and cited evidence supported the opinion. 2023 WL 3293086 at *4. Here, the Commissioner's defense of the ALJ's supportability analysis similarly conflates the consistency and supportability factors. Although the ALJ acknowledged that that Dr. Kurichh's opinion was supported by examination findings, the decision did not evaluate whether, or explain how, those findings supported Dr. Kurichh's opinion. ECF No. 9-3 at 48. Instead, the ALJ relied on evidence elsewhere in the record that allegedly conflicted with Dr. Kurichh's conclusions without addressing the "diagnostic techniques, data collection procedures/analysis, and other objective medical evidence" underlying her opinion. *Carlos F.*, 2023 WL 3293086, at *3. As in *Carlos F.*, the ALJ's failure to evaluate the opinion's internal support renders the ALJ's supportability analysis legally insufficient.

The Commissioner further argues, relying on *Janowsky* v. *Berryhill*, that the ALJ permissibly discounted Dr. Kurichh's opinion because Dr. Kurichh used vague terms. ECF No. 15 at 18; No. 7:17-CV-246-D, 2018 WL 6710240, at *7-8 (E.D.N.C. Nov. 19, 2018), *report and recommendation adopted sub nom.*, 2018 WL 6706678 (E.D.N.C. Dec. 20, 2018). That reliance is misplaced. The *Janowsky* court upheld the ALJ's decision to discount the examiner's opinion because the ALJ conducted the required consistency and supportability analyses. 2018 WL 6710240, at *7-8. The ALJ identified specific inconsistencies in the record and explained that the examiner's own test results did not support the conclusions reached. *Id.* Although the ALJ also noted that the opinion used vague language and imposed ambiguous restrictions, vagueness was not the sole basis for assigning little weight to the opinion. *Id.* Rather, it was cited in addition to, not as a substitute for, the required consistency and supportability analyses. *Id.*

Here, unlike in *Janowsky*, the ALJ did not meaningfully evaluate whether Dr. Kurichh's examination findings supported her opinion. Accordingly, the ALJ's evaluation of the medical opinion remains legally deficient from a supportability analysis standpoint regardless of whether the medical opinion was vague as the Commissioner suggests.

### D.     Subjective Statements

When evaluating a claimant's subjective symptoms, an ALJ is required to use the two-step framework set forth in 20 C.F.R. § 404.1529 and Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims (SSR 16-3p), 2016 WL 1119029 (SSA Mar. 16, 2016). *Arakas* v. *Commissioner, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020). Under this framework, the ALJ must first "determine whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms." *Id*. (quoting 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3). Second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2; *see also Arakas*, 983 F.3d at 95; 20 C.F.R. § 404.1529(c). Importantly, "[a]t this step, objective evidence is *not* required to find the claimant disabled." *Arakas*, 983 F.3d at 95 (emphasis in original).

Consideration of the intensity, persistence, and limiting effects of symptoms requires the ALJ to examine the entire record, including the objective medical evidence; the claimant's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the case record. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4–7. The ALJ may also consider factors such as daily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the

type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; and treatment, other than medication, received for relief of pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *7. A claimant is "entitled to rely exclusively on subjective evidence" to prove the severity and extent of their symptoms. *Arakas*, 983 F.3d at 96 (quoting *Hines* v. *Barnhart*, 453 F.3d 559, 563, 565 (4th Cir. 2006)). Thus, an ALJ commits "reversible error by improperly increasing Plaintiff's burden of proof by 'effectively requiring' [their] subjective symptoms to be 'supported by objective evidence.'" *Christina W.* v. *O'Malley*, Civil Action No. CDA-23-1325, 2024 WL 3819343, at *4 (D. Md. Aug. 14, 2024) (quoting *Arakas*, 983 F.3d at 96); *see also Stoker* v. *Saul*, 833 Fed. Appx. 383, 386 (4th Cir. 2020) (finding that "the ALJ's determination that [the claimant's] assertions about the severity and limiting effects of his pain were less credible merely because no objective medical evidence supported them, was improper").

Here, Plaintiff argues that the ALJ applied an improper standard by discounting her subjective complaints solely because they were not supported by objective medical evidence. ECF No. 13 at 18–19. Plaintiff further contends that the ALJ failed to adequately evaluate the intensity and persistence of her symptoms when determining her residual functional capacity. *Id.* at 19. The Commissioner responds that the ALJ's analysis of Plaintiff's subjective complaints was legally sufficient, and he provided valid reasons for his conclusions. ECF No. 15 at 19.

At step one of the framework, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." ECF No. 9-3 at 45. At the second step, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Id.* The record details, and the ALJ summarized, that Plaintiff alleges disability based on congestive heart failure, diabetes mellitus,

14

hypertension, and a rotator cuff tear and carpal tunnel syndrome.  *Id.* at 44.  Plaintiff testified that she experiences daily angina, chest spasms related to her sternal wound, shortness of breath with minimal exertion, and numbness and tingling in her hands, particularly on her right side.  *Id.* at 44–45; ECF No. 9-6 at 102, 107.  In assessing Plaintiff's symptoms related to these complaints, the ALJ cited Plaintiff's hearing testimony and medical records.  ECF No. 9-3 at 45–48.  The ALJ's evaluation of Plaintiff's subjective statements is inadequate.  The ALJ failed to explain why certain evidence was credited over Plaintiff's testimony and improperly evaluated evidence regarding Plaintiff's daily activities.

In *Willis F.* v. *Kijakazi*, this Court found that the ALJ's opinion did not provide a bridge between the evidence and the ALJ's conclusion because the ALJ did not explain how the objective medical evidence "either undermine[d] or [was] entitled to more weight than Plaintiff's continued reports of pain."  Civil Action No. AAQ-23-318, 2023 WL 8437229, at *2-3 (D. Md. Dec. 5, 2023); *accord Candace W.* v. *Dudek*, Civil Action No. ADC-24-2124, 2025 WL 885998, at *4 (D. Md. Mar. 21, 2025); *Kevin T.* v. *O'Malley*, Civil Action No. CDA-23-312, 2023 WL 8993664, at *4 (D. Md. Dec. 28, 2023); *Towanna G.* v. *Kijakazi*, Civil Action No. BAH-21-1711, 2022 WL 4017417, at *4 (D. Md. Sept. 2, 2022).

Similarly, here, the ALJ did not "build an accurate and logical bridge" between the evidence and his conclusion.  *Stoker*, 833 Fed. Appx. at 386 (quoting *Brown* v. *Commissioner Soc. Sec. Admin.*, 873 F.3d 251, 269 (4th Cir. 2017)).  The ALJ acknowledged that Plaintiff reported daily chest pain and spasms requiring her to lie down for up to four hours, difficulty walking or climbing stairs without becoming winded, and limited ability to reach overhead or use her hands.  ECF No. 9-3 at 44–45.  He also noted that she testified that she no longer cooks, cleans, shops, or manages her finances; relies on her daughter for household tasks and personal care; and limits her activities to resting and maintaining comfort at home.  *Id.*  The ALJ then

summarized the opinions of several medical examiners and concluded that "various factors [were] inconsistent with limitations to the degree alleged." *Id.* at 47.  In support of that conclusion, the ALJ citied Plaintiff's conservative treatment, post-surgical stability, minimal treatment for carpal tunnel syndrome and shoulder impairment, and improved diabetes control. *Id.*  The ALJ did not, however, explain how those findings undermined Plaintiff's specific allegations of pain, fatigue, and functional limitation.  Furthermore, the ALJ provided no explanation of why Plaintiff's allegations of pain and limitations were entitled to less weight than other evidence in the record.  *Willis F.*, 2023 WL 8437229, at *3; *see also Towanna G.*, 2022 WL 4017417, at *4 (reversing and remanding where the ALJ "failed to effectively explain *how* the objective medical evidence contradicts Plaintiff's subjective complaints") (emphasis in original).

When assessing daily activities, an "ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which [the claimant] can perform them."  *Oakes* v. *Kijakazi*, 70 F.4th 207, 216 (4th Cir. 2023) (emphasis in original) (quoting *Woods* v. *Berryhill*, 888 F.3d 686, 694) (4th Cir. 2018)).  As the Fourth Circuit has explained, "[d]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."  *Lewis v. Berryhill*, 858 F.3d 858, 868 n.3 (4th Cir. 2017) (internal quotation marks and citations omitted).  "Being able to live independently and participate in everyday activities of life empowers people with disabilities and promotes their equal dignity."  *Arakas*, 983 F.3d at 101.

Here, the ALJ relied on Plaintiff's statements to providers that she was "able to perform her activities of daily living" but failed to reconcile those statements with Plaintiff's testimony that she no longer cooks, cleans, shops, or manages her own finances, and instead relies on family members for assistance.  ECF No. 9-3 at 47.  As the Fourth Circuit held in *Oakes*, an ALJ

may not rely on the mere ability to perform daily activities without considering their frequency, duration, or the assistance required.  70 F. 4th at 216.  The ALJ's assertion that Plaintiff's impairments "impose some limitation," but that the degree of limitation was "accounted for" in the residual functional capacity analysis, does not cure this defect.  ECF No. 9-3 at 47.  That conclusory statement does not explain how the evidence is inconsistent, which limitations were discounted, or why some evidence was credited over other allegedly inconsistent evidence.  For these reasons, the ALJ's analysis of Plaintiff's subjective statements is not supported by substantial evidence, precludes meaningful review, and requires reversal.

### E.    Residual Functional Capacity

Finally, Plaintiff contends that substantial evidence does not support the ALJ's residual functional capacity finding.  ECF No. 13 at 8–13.  The Commissioner argues the opposite.  ECF No. 15 at 10–17.  "When an individual is not engaging in substantial gainful activity and a determination [regarding eligibility for benefits] . . . cannot be made on the basis of medical factors alone . . . the sequential evaluation process generally must continue with an identification of the individual's functional limitations . . . and an assessment of his or her remaining capacities for work-related activities."  SSR 96-8p, at 61 Fed. Reg. 34,475.  The latter part of this analysis is expressed as a claimant's residual functional capacity, which is the most the claimant can do in a work setting on a regular and continuing basis despite any impairments or related symptoms.  *Id.*; 20 C.F.R. § 404.1545; *see also* I.B, *supra*.

A claimant's residual functional capacity is determined using a two-step process.  The ALJ must first "identify the individual's functional limitations . . . and assess his or her work-related abilities on a function-by-function basis."  SSR 96-8p, at 61 Fed. Reg. 34,475.  "The function-by-function approach asks the ALJ to consider a claimant's specific 'exertional and

17

nonexertional functions.'"[6]  *Ladda* v. *Berryhill*, 749 Fed. Appx. 166, 173 (4th Cir. 2018)

(quoting SSR 96-8p, at 61 Fed. Reg. 34,476).  The ALJ then expresses a claimant's residual

functional capacity "in terms of the exertional levels of work," such as "sedentary, light,

medium, heavy, and very heavy."  SSR 96-8p, 61 Fed. Reg. at 34,475; *see also* 20 C.F.R.

§ 404.1567 (defining the physical exertion requirements of each exertional level of work).

While the SSA guidelines require a "function-by-function" analysis to determine a

claimant's residual functional capacity, the Fourth Circuit has held that this analysis does not

need to be explicit.  *Mascio*, 780 F.3d at 636 (rejecting "a per se rule requiring remand when the

ALJ does not perform an explicit function-by-function analysis").  Instead, the key consideration

is whether the ALJ identified the evidence relied upon in determining the claimant's residual

functional capacity and built "an accurate and logical bridge from the evidence to that

conclusion."  *Monroe*, 826 F.3d at 189 (internal quotation marks and citation omitted).  A proper

residual functional capacity analysis "has three components: (1) evidence, (2) logical

explanation, and (3) conclusion."  *Thomas*, 916 F.3d at 311.  The second component of this

analysis, "the ALJ's logical explanation, is just as important as the other two."  *Id.*; *see also* SSR

96-8p, 61 Fed. Reg. at 34,478 ("The [residual functional capacity] assessment must include a

narrative discussion describing how the evidence supports each conclusion, citing specific

medical facts . . . and nonmedical evidence.").  Remand may be appropriate "where an ALJ fails

to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in

the record," *Mascio*, 780 F.3d at 636 (internal quotation marks and citation omitted), or where

---

[6]  "Exertional capacity . . . defines the individual's remaining abilities to perform each of seven strength demands: [s]itting, standing, walking, lifting, carrying, pushing, and pulling." Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 Fed. Reg. 34,474-01, 34,477 (July 2, 1996).  "Nonexertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength," such as stooping, climbing, reaching, seeing, hearing, speaking, understanding and remembering instructions, and tolerance of temperature extremes.  *Id.*

the ALJ's residual functional capacity analysis "contains too little logical explanation for . . . meaningful appellate review," *Thomas*, 916 F.3d at 312.

Here, the ALJ determined in the residual functional capacity assessment that Plaintiff could perform light work.  ECF No. 9-3 at 44.  Among other things, light work "requires a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls."[7]  20 C.F.R. § 404.1567(b).  To reach this conclusion, the ALJ assessed Plaintiff's symptoms, as well as objective medical evidence, medical opinions, and prior administrative medical findings.  ECF No. 9-3 at 44.  As noted, *see* I.C., *supra*, the ALJ identified several exceptions to Plaintiff's capacity for light work.  *Id.*  Although the ALJ summarized evidence from the record relevant to this conclusion, he did not explain how that evidence supported the specific limitations imposed, or the ultimate conclusion that Plaintiff could perform light work. The decision therefore lacks the required logical bridge between the evidence and the residual functional capacity determination.

This deficiency is illustrated by the ALJ's discussion of two prior administrative medical findings.  *Id.* at 47.  The ALJ summarized an October 28, 2022 medical opinion that concluded the plaintiff "could perform light exertion work, could occasionally climb ladders, ropes, or scaffolds, stoop, and crawl, and could never reach overhead with the right arm."  ECF Nos. 9-3 at 47; 9-7 at 2–8.  The ALJ then noted that "[u]pon reconsideration [on] May [9,] 2023, a state

---

[7]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  28 C.F.R. § 404.1567(b); *see also* Titles II & XVI: Determining Capability to Do Other Work—the Med.-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983), 1983 WL 31251, at *5-6.

agency reviewing physician agreed that claimant could perform light exertion work *but instead* determined that the claimant had no postural or manipulative limitations, but should avoid concentrated exposure to extreme temperatures and pulmonary irritants."  ECF Nos. 9-3 at 47; 9-7 at 10–15. (emphasis added).  The ALJ found these medical opinions to be "somewhat consistent with evidence from the record" without explaining how they are inconsistent or specifically citing other inconsistent evidence.  ECF No. 9-3 at 47.  Thus, the ALJ "fail[ed] to assess [the] claimant's capacity to perform relevant functions, despite contradictory evidence in the record."  *Mascio*, 780 F.3d at 636 (internal quotation marks and citation omitted).  The ALJ did not explain what aspects of the physician's opinions were credited or rejected, how the physician's differing assessments of postural and manipulative limitations were resolved, or how those opinions supported the specific limitations included in the residual functional capacity assessment.  Nor did the ALJ explain how these opinions, taken together, supported the conclusion that Plaintiff could meet the standing or walking demands of light work.

The ALJ's conclusions regarding the limitations on Plaintiff's ability to handle, finger, feel, push, pull, or reach suffer from the same defects.  The record contains varying opinions on Plaintiff's capacity to perform those functions.  *Compare* ECF No. 9-7 at 2–8 *with* 9-7 at 10–15.  Yet, the ALJ merely stated that Plaintiff's impairments imposed "some limitations" and that the residual functional capacity accounted for the degree of limitation supported by the record.  ECF No. 9-3 at 47.  This conclusory statement does not explain how the ALJ weighed the conflicting evidence or why the chosen limitations were appropriate.  *Elijah H.* v. *O'Malley*, Civil Action No. SAG-23-1786, 2024 WL 1833608, at *4 (D. Md. Apr. 26, 2024) (finding a lack of explanation constitutes reversible error); *Christina W.*, 2024 WL 3819343, at *5 (same).  Because the ALJ's discussion does not describe how the evidence supports the residual functional capacity finding, it "contains too little logical explanation for . . . meaningful appellate review."  *Thomas*, 916 F.3d at 312.

## III.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion pursuant to sentence four of 42 U.S.C. § 405(g).  In remanding for further explanation and analysis, the Court offers no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.  A separate Order follows.

Date:  February 6, 2026                                      /s/

                                                             Erin Aslan
                                                             United States Magistrate Judge